JAMES M. RIDGE

*v.*

THE PENNSYLVANIA RAILROAD COMPANY.

[Filed May 5th, 1899.]

Where a railroad company acquires land for terminal purposes in the heart of a city, it cannot use such land in disregard of the comfort and property of others. It must adjust its operations so as to produce the least annoyance possible.

On bill, answer and proofs.

The complainant owns a three-story brick house fronting on Mickle street, in the city of Camden. A part of the first floor of this house is used as a drug store, and the room above, fronting on Mickle street, is used by complainant as a physician's office. This house is thirty feet north from the southeast corner of Third and Mickle streets. One hundred feet north of Mickle street and parallel with it is Bridge avenue. Along Bridge avenue are laid three tracks of the Pennsylvania railroad, leading to its yard and station on the east side of the Delaware river. Mickle street is sixty feet wide and is closely built upon both sides at this point. Second street is the next street to Third street, towards the river and yard of the Pennsylvania railroad. Between Second street and the river the yard and station lie.

The bill charges that the right to use the tracks of the railroad for strictly yard purposes, namely, for making up trains, shifting cars, &c., is confined to the limits of the yard lying between Second street and the river. The bill charges that for a long time past the company has unlawfully used the three tracks along Bridge avenue, north of Second street, for the purpose of distributing cars and making up trains, and using engines there for shifting and coupling, and detaching cars near the dwelling of the complainant; that at frequent intervals during every day and night, the engines stop and keep standing near said house from one to thirty minutes, and discharge large volumes of smoke, soot, cinders and gases, which are carried into the rooms of said house; that cars loaded with cattle and manure are kept standing there, and that the noise of bumping cars, the shouting of men in drilling cars, the ringing of bells, blowing of whistles, hissing of steam and groaning of cattle, are a nuisance. The bill states that Third street, at its point of crossing Bridge avenue, is often obstructed. An injunction is prayed for.

The answer sets up that the company is in possession of the tract of land for terminal purposes, including a strip of land eastward of Second street, on the north side of Bridge avenue,

to Fourth street. Fourth street crosses Mickle street north of complainant's residence.

The answer states that the defendants have purchased all the property fronting on Bridge avenue, between Fourth street and the river, from No. 7 to No. 19 on the south side, and from No. 1 to No. 16, inclusive, on the north side of Bridge avenue, by which purchases they acquired the fee in the soil covered by said avenue lying west of Fourth street; that that part of Bridge avenue on a line forty feet from the south house line was vacated; that the sixty-foot strip thus vacated upon which the three tracks are laid, together with the property purchased on the north side of Bridge avenue, was acquired for terminal purposes, and constitutes the throat of the yard, and has been used in connection with this terminal.

The answer denies the general allegation of the bill in respect to the standing of cattle and manure cars; and in respect to the emission of smoke, gas and noises, it states that it is one of the incidents of defendant's business, and that it is the result of the necessary use of the property so acquired for the purpose of drawing cars upon it in order to clear the switches in front of the passenger station, or to run them upon the storage tracks, and to draw freight cars to place them upon their proper tracks to be made up into trains. It claims the right to so purchase and use the land under the charter of the Camden and Amboy Railroad and Transportation Company.

*Mr. John L. Semple,* for the complainant.

*Mr. Joseph Gaskill,* for the railroad company.

REED, V. C.

In support of the complainant's case, the doctrine enunciated by the court of appeals in the case of *Angle* v. *Pennsylvania Railroad Co., 14 Stew. Eq. 316,* is vouched. The bill is admittedly modeled after the pleadings in that case. That was a suit brought against the same corporation by a resident on the southerly side of Bridge avenue, between Second and Third streets, who com-

Ridge v. Pennsylvania R. R. Co.

plained that the company had created a nuisance by the use of their railroad in front of his house in a matter similar to that now charged by the present complainant.

The court in that case held the defendants were guilty of maintaining a nuisance on the ground that they had no right to use their tracks north of Second street for any purpose other than the passage of their trains, while, in fact, they had used them for terminal purposes.

If the right of the railroad company to use the three tracks mentioned has not been enlarged since the decision of that case, the complainants are clearly entitled to an injunction; for it is not denied by the defendants that they have habitually used the same portions of their road for terminal purposes.

The first question, then, is whether they have acquired any rights that they did not possess at the time of the former litigation. Then, their tracks north of Second street were laid upon a street, and the court held that neither by legislation nor municipal grant had they acquired any right to use those tracks as a part of their terminal yard. Since then the company has acquired the fee in the land covered by these tracks and sixty feet of the street has been vacated, leaving the fee in the company disencumbered of the public easement. Upon this vacated strip the company have placed their three tracks, and this strip of land, together with the property north of it, the company have shown to be necessary for the operation of their terminal yard.

The act of 1855 (*P. L. of 1855 p. 118 § 65*), cited in the opinion in *Angle* v. *Pennsylvania Railroad Co., supra*, conferred upon the railroad company power to purchase and hold so much land as might be strictly necessary for most conveniently storing and working upon their engines, cars, fuel and material to be used on their roads, to the best advantage, &c. I am of the opinion that the company now have the right to use the track between Second and Fourth streets, in conjunction with their former yard.

But I do not think that the company have the right to use the strip of land between Second and Fourth streets in the same way that they could use their former yard.

The case of *Beseman* v. *Pennsylvania Railroad Co., 21 Vr. .235; S. C., affirmed, 23 Vr. 221*, relied upon by the company, does not, I think, go to this extent. That action was for damages to the owner of lands, occasioned by the railroad, which ran within ten feet of the owner's property. He complained that his dwelling-house was rendered unfit for habitation by reason of cars, loaded with animals, which the company permitted to stand upon the tracks near his house, and by the noise of whistles, &c. A plea was filed setting out the charter rights of the defendant to locate its yard, and in the language of the opinion set up " that by force of its franchise, derived from the public grant, it has built its road and run its trains, carrying merchandise and freight near to the land of complainant, doing to the complainant no more damage than that which necessarily results from the transaction of such acts and business."

It is perceived that the plea in that case, as thus construed by the court, set up that the injury charged was a necessary incident in the operation of the defendant's road under its charter. The court held that as railroads possess a public character, therefore any injury which is the consequence of the necessary exercise of their chartered privileges is *damnum absque injuria*.

In the opinion in the *Beseman Case* the case of *Baltimore and Potomac Railroad Co.* v. *Fifth Baptist Church, 108 U. S. 328*, was referred to. In the latter case it was denied by the supreme court of the United States that the railroad had been invested with the privilege of building an engine-house or repair-shop next to a church in the city of Washington. The court held that the grant of power did not authorize the company to place such structure wherever it might think proper in the city without reference to the property or rights of others. The doctrine of that case was approved in the opinion of *Beseman* v. *Pennsylvania Railroad Co., supra*, upon the ground that in selecting the place for repair-shops the railroad company acted altogether in a private capacity. Such location, it was said, was a matter of indifference to the public, and consequently, with respect to such act, the corporation stood upon the footing of an individual and was entitled to no superior immunities. What was meant

Ridge *v.* Pennsylvania R. R. Co.

was, that while the public was concerned that a railroad company should have all the appliances, including repair-shops, to make its public service effective, it was immaterial to the public where such appliances were placed, so long as the service was efficient.  All that concerns the public is to have an efficient service in the way of transportation of persons and freight. The company is shielded from responsibility for incidental damages resulting from acts which are necessary to bring about such service.  In the federal decision it was admitted that the company, by virtue of its franchise, had the right to build repair-shops and engine-houses, but having the liberty to choose different sites for its structures, it was bound to select one where they would not inflict an injury upon the property of others, else, as Mr. Justice Field remarked, "it might have built them in front of the capitol."

Therefore, the right of this company to use the strip of land upon which the three tracks are placed, between Second and Fourth streets, for terminal purposes, does not include the right to use them for all purposes to which a terminal yard may be devoted.  The company is bound to take into consideration the environments and adjust its operations so as to produce the least annoyance to persons and property, in placing the instruments necessary to transact its business.

The strip of land projects from the original yard into the heart of the city of Camden, into a part of the city which was occupied for residential and business purposes long before the land was purchased by the company.  The terminal yard, lying between Second street and the river, is free from these environments.  In adjusting its terminal affairs the company, I think, should regard these conditions and adjust its business so that it will be the least likely to inflict injury upon others.  This indeed it claims it has done.  It has proved that the use of the tracks between Second and Fourth streets is necessary for drilling cars, in breaking up arriving trains and forming departing trains, both passenger and freight.  It has proved that it is often necessary to stop trains upon these tracks before entering the yard, to await signals that the tracks are clear.  It denies that the

12

tracks are used for any terminal purposes aside from those mentioned. It insists that the drilling of cars has been necessary to the operation of the yard, and that no cars or engines have been permitted to stand upon these tracks between Second and Fourth streets, or across Third street, any longer than such service required.

That the complainant has been annoyed by the noise of bumping cars and of engine whistles and bells, as well as by the smoke of locomotives, particularly of those attached to freight cars, there is no doubt. The delicate operations of diagnosis were easily interrupted by noises which would not have disturbed persons otherwise engaged. The cleanliness which should attend a well-conducted pharmacy was made difficult by the soot, which in certain conditions of the atmosphere and directions of the wind, would naturally be deposited by freight engines even if merely passing. But these are the incidents of railroading for which no responsibility arises, if they are the necessary results of the operation of the road.

The question is resolved into the query whether the company habitually conducts its operations upon these tracks in such a way as to create unnecessary nuisance and dirt, which specially injured the complainant. There are a number of witnesses who testified to the extent of noise and smoke and gas in the vicinity of Bridge avenue, and obstructions at Second and Fourth streets, which entailed prolonged interruption of passage along said streets at Bridge avenue. The opinion of these witnesses is that this was the result of having engines or trains either standing upon the three tracks mentioned, or moving backward and forward in the drilling of cars.

There are also a number of witnesses who live or board in the vicinity of the complainant's house, who have found little or no disturbance or nuisance from the smoke, dirt and noise; they say also that the delay of crossing Third street is rarely over two or three minutes, which delay may be caused by departing trains at certain hours following each other in quick succession.

The force of the testimony on both sides must be discounted by the feelings of the witnesses. Those of the complainant who

Ridge v. Pennsylvania R. R. Co.

are more or less annoyed even by the passage of a large number of trains which pass over the tracks during the twenty-four hours, and who feel aggrieved by the smoke and noise that such traffic engenders, although strictly incidental to the legitimate business of the company. On the other hand, many of the witnesses are in the service of the company or related to some one in such service, and are disposed to overlook any discomfort from the source named. I have no doubt that there has been on occasions unnecessary smoke and dirt created by the engines standing upon these tracks.

I believe Mr. Garrow when he says he has seen three and four engines standing there, the engineers of some of them poking their fires, which sent up volumes of black smoke. It is proved that on some occasions the crossing at Third street was obstructed for periods of time, which periods, it is admitted by officers of the company, have been unnecessary in the ordinary operation of the yard, and to be accounted for only by some accident. This obstruction in Third street is important only in exhibiting the manner in which the tracks are used.

Doctor Bray says that he was, in September last, detained ten minutes, by his watch, by a freight train lying across the street, and when he asked an employe when they were going to let him through, he received the insolent reply, "that if he kept his watch out and looked at it he would find out."

There are other witnesses who say that they were detained ten, fifteen and twenty minutes, but the dates are not given, nor do they swear by their watch, as does Doctor Bray, but by the length of time as they now recall it. When a witness speaks of minutes, in recalling periods of time not actually measured by a timepiece, it is necessarily uncertain; the seeming length of the interval depends upon the mood of the witness at the time. The only witness who gives dates is, I think, Mr. Garrow, who says that on September 16th and 17th there was an engine with a car which stood for fifteen minutes on the tracks above Third street, sending out black smoke and exhaust steam, and that on the 18th there was almost constant drilling, and volumes of smoke from standing and drilling engines.

While I think that on the occasions spoken of by Doctor Bray and Mr. Garrow, the company abused their right to use the tracks for terminal purposes in the modified manner which I have indicated, yet these particular instances do not alone prove such an habitual misuse by the defendants of their tracks as to establish the existence of a nuisance which this court will enjoin.

The remaining testimony is deficient in dates and is general as to times of track occupation, and therefore impossible of specific refutation.

I have therefore concluded that there is not proven such a clear case of an habitual violation by the defendants of the rights of the complainant as will justify an injunction, even in the very general form in which such a writ would have to be drafted, if allowed.

I advise a decree dismissing the bill, but without costs.