JOHN B. THOMPSON v. THE PENNSYLVANIA RAILROAD COMPANY.

1. An adjacent land-owner can maintain an action at law for damages resulting from the running of railroad trains on a public highway only when he can show a negligent exercise by the company of its legal rights or a use in excess of such rights, injurious to such owner.

2. The opinions of witnesses as to the difference between the value of property, either to sell or rent, estimated with the railroad in the street and as operated by the company, and the value of the same property without the railroad, is inadmissible, the matter not calling for the opinion of experts.

3. The owner of land adjoining a railroad who sold the same, reserving no rent and no rent having been assigned to him, and who afterwards receives back a deed for the same, cannot recover damages from injury done to the property when the title was outstanding, even though while out of ownership he was permitted by the owner to collect the rents for his own use.

On rule to show cause.

Argued at June Term, 1888, before BEASLEY, CHIEF JUS-TICE, and Justices KNAPP, MAGIE and GARRISON.

For the rule, *P. L. Voorhees.*

*Contra, John W. Wartman.*

The opinion of the court was delivered by

KNAPP, J.   The plaintiff was the owner of two pieces of property abutting on Bridge avenue, in Camden, and dwelt in one of these premises.   Through Bridge avenue the defendant has its railway line, consisting of three tracks.

The suit was brought to recover damages for alleged injury to the possession of these tenements by surrounding them with noises, noisome and offensive smokes and stenches, through the unlawful management by the defendant of its railroad.

At the trial a verdict was taken for the plaintiff, and this rule granted to show cause why that verdict should not be set aside.   The only question requiring consideration in the case as it stands before us, is whether the rule of damages and the method of proof which prevailed in the trial of the cause were the correct ones.

It was proved in the case, and is not here contested, that the defendant company of right occupied the avenue in question with its railroad, and was endowed with due authority to run over its lines of road trains for the transportation of passengers and freight.   The rule is not put in question that the adjacent land-owner can maintain an action at law for damages resulting from the running on such public highway, when, and only when, he can show a negligent exercise by the company of its legal rights, or a use in excess of such rights, injurious to such owner.   Nor is it denied that those incidental inconveniences which unavoidably follow the careful and skillful running of trains upon a railroad, whether from noise or other disturbances necessarily arising from such use, are within the corporate privileges, and give no ground of action to the persons suffering from them.   This concession of the

relative rights of the parties in respect to the subject-matter of this suit is only in recognition of principles clearly established by settled adjudication. *Angel* v. *Pennsylvania R. R. Co.,* 14 *Stew. Eq.* 316 ; *Beseman* v. *Pennsylvania R. R. Co.,* 21 *Vroom* 235.

It is apparent, then, that the only basis of a claim for damage on the part of the plaintiff is such uses of the company's road as transcend its legal rights to the detriment of the plaintiff.

Conceding that there was evidence in the cause to go to the jury tending to show such illegal management in the running of defendant's trains and consequent annoyance to the plaintiff in the enjoyment of his property, obviously the damages to be admeasured were for those injuries only that such unauthorized uses occasioned, excluding all consideration of such incidental inconveniences as necessarily arose from the authorized operation of the road.

The direct question to be resolved, then, was what loss, in depreciation of the rental value of the plaintiff's property, was occasioned by unwarranted uses of defendant's railroad ? The testimony, therefore, should have been restricted to an elucidation of this subject. The plaintiff did not, however, pursue a course of inquiry that could throw light on this issue, but directed his proof entirely, or nearly so, to an ascertainment of the difference between the value of the property (either to sell or to rent) estimated with the railroad in the street, and as operated by the defendant, and the value of the same property without the railroad. Each of the witnesses called by the plaintiff to speak to the subject of damages, was asked in his turn to give his opinion and estimate of the depreciation of the plaintiff's property, by reason of the presence of the railroad in the street. And it was upon this hypothesis that their opinions were based.

This course of examination was inadmissible and misleading, and it ran so entirely through the case that it is difficult to believe that the jury did not yield to its influence and guidance. The testimony was the more deeply impressed upon

their minds by the fact that it was permitted to come into the case by repeated rulings in its favor against objections to its admission. The purpose, no doubt, of the trial judge was to purge the case of this objectionable testimony in submitting the cause to the jury. He announced, in an early stage of the cause, that it would be received subject to his subsequent ruling upon it; and in charging the jury, he gave to them the correct rule of damages. But, in turning the attention of the jury to evidence which would serve to guide them in assessing damages, they were directed to consider the testimony of the experts, and the opinions expressed by them, of the extent of depreciation of the rental value of the plaintiff's property. As already stated, these opinions all related to a depreciation of such value wrought by the presence in the street of the defendant's railroad, and were not based upon injury to plaintiff's property caused by injurious acts of the defendant in excess of its chartered rights.

The jury were thus led (quite inadvertently, I think) to consider the damages of the plaintiff upon an entirely erroneous principle.

The case was wrongly given to the jury upon another point. In 1879 the plaintiff conveyed the two tenements to one Derhamer, and received back a deed for them about one year before the suit was brought. The plaintiff had possession of but one of the premises during the time of the injury laid in the declaration. During four years of this period, he neither owned nor possessed the other; but the jury was allowed to assess for injury to both lots for the whole time.

I think that it was error to allow for the one lot damages to cover the period of time when the plaintiff had not title to the piece of property and was out of its actual possession. I can discover no way in which the plaintiff could suffer any damage from injury done to this property when the title was outstanding. A permanent injury to it was no loss to him. He was not lessee of the premises, and could suffer nothing from a diminished rental value.

Rent belongs to the reversion. True it may be severed

from it by grant or reservation in a deed conveying the lands (*Farley* v. *Craig*, 6 *Halst.* 262), or by assignment of it by the lessor. *Ryerson* v. *Quackenbush*, 2 *Dutcher* 236.

The conveyance of the property by the plaintiff to Derhamer, in 1879, reserved no rent, and no rent issuing out of the premises by any subsequent contract had been assigned to the plaintiff. But had the plaintiff been entitled to a rent, it is obvious that it could not have been diminished in amount, nor could his right to demand its payment have been impaired, by a temporary nuisance suffered by the tenant in the use of the demised premises.

I allowed no force to the circumstance that the plaintiff while out of ownership of the property was permitted by the owner to collect from tenants and appropriate to his own use the rents which the premises earned. It appears to have been a gratuity on the part of the owner to the plaintiff. That such gift was not, through defendant's fault, of greater amount, is not an actionable injury. The consequence is that the plaintiff was allowed damages which may be again demanded by the owner or his tenant of defendant.

The admission of the testimony of so-called experts in this case has not been alluded to, but it is, as I think, subject to criticism. The general rule is that the opinion of a witness is not admissible. The exception is when required deduction from facts can only be drawn by witnesses possessed of special knowledge or skill concerning those facts. Such witnesses are experts, and their opinions are received from necessity. The true distinction between experts who may speak their opinions and non-experts who may not, is, "the non-expert testifies as to conclusions which may be verified by the adjudicating tribunal, the expert to conclusions which cannot be so verified. The non-expert gives the result of a process of reasoning familiar to every-day life; the expert gives the results of a process of reasoning which can be mastered only by special scientists." *Whart. Ev.*, § 35.

The injurious facts put in evidence in the present case are disturbing noises, offensive smoke and disagreeable odors and

stenches unnecessarily created by the defendant. The tendency of these to affect injuriously enjoyment of property and the comfort of persons subjected to their influence is a matter of knowledge not confined to an instructed few, unfortunately, but is well known to all. The sum of money which will in any case compensate for such injury is solely for the jury to measure.

It seems clear to me that this part of the case presented no phase legally permitting the introduction of the opinion of witnesses. With the direct facts before the jury it was competent, and was required to decide the case upon its own conclusions.

For the foregoing reasons, there should be a new trial, and the rule is made absolute.