MARTIN COSTIGAN AND CATHARINE COSTIGAN v. THE PENNSYLVANIA RAILROAD COMPANY AND THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

1. The plaintiffs are the owners of a lot of land with dwelling-houses thereon contiguous to a strip of land owned by a railroad company, on which the company constructed a high embankment as a road-bed for its railroad. In an action of tort by the former against the latter, *Held*—

1. That a declaration which averred that the defendant, wrongfully and injuriously intending, &c., filled in upon its lands a great quantity of ·earth, &c., and raised thereon an embankment of great height, and thereby forced and pressed a large quantity of said earth, &c., into and ·upon the plaintiffs' lot, beneath the surface of the same, and thereby ·upheaved the surface of the same and caused the foundation and walls of the dwelling-houses thereon to crack and topple over, disclosed a good cause of action.

2. That a plea setting up the charter of the defendant, authorizing it to construct and operate a railroad, was no justification for the injury ·complained of, although it be averred in the plea that the company con-:structed its railroad upon its own lands, with reasonable care and pru-·dence, doing no unnecessary damage to the property of others. *Beseman* v. *The Pennsylvania R. R. Co.*, 21 *Vroom* 235, distinguished.

3. The distinction is between those incidental injuries which are un-:avoidable in the operation of a railroad in the transaction of its business, such as the sounding of whistles, the emission of smoke and sparks from locomotives, the noise and vibrations incident to the moving of ·trains, annoyances from the character or condition of freight transported, and the like, which are injuries partaking of the nature of public injuries, and acts which are a direct invasion of private property.

4. Injuries of the class first mentioned are the necessary concomitants of the use of the franchises granted. The acts from which such injuries arise, being legalized by the company's charter, are not public nuisances, and there is no foundation on which to apply the principle

that a private individual may maintain an action for an injury arising from a public nuisance which is special and peculiar to him beyond that suffered by the public. But for acts done under legislative sanction, which are essentially private wrongs and a direct invasion of private property, the company's charter is no justification.

2. The defendant also pleaded in bar, by way of a release, that the premises owned by the parties respectively were formerly owned by one A; that A conveyed to C, under whom plaintiff derived title, and in the deed to C the latter covenanted for himself, his heirs and assigns, that neither he nor they would claim any damage in anywise arising to the premises conveyed from the building or maintaining of the railroad then to be built by the railroad company. *Held*—

1. That a covenant perpetual not to claim damages will be construed to be a release if necessary to give effect to the intention of the parties. The principle on which this construction rests is to avoid circuity of action—the damages recovered by the covenantor in his suit being the same as the covenantee would recover back in an action for the breach of the covenant.

2. That the covenant contained in the deed of conveyance by A to C was not available by the defendant as a defence in this suit, for the reasons (1) that the covenant was not a grant of an easement, or of a right in the nature of an easement, and that if it be a covenant real, it did not at law run with the lands and bind the alienee of the covenantor, and (2) that the covenant, being contained in a deed *inter partes,* must be construed as a covenant *inter partes* with A individually for his personal indemnity against the recovery of damages from him.

On case certified from Hudson Circuit. On demurrer to pleas.

Argued at November Term, 1891, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the plaintiffs, *Randolph, Condict & Black.*

For the defendants, *Vredenburgh & Garretson.*

The opinion of the court was delivered by

DEPUE, J. The plaintiffs are owners of a lot of land on which were erected two dwelling-houses. The premises are situated near to a strip of land on which the defendants are engaged in constructing a railroad. The declaration charges

that " the defendants, wrongfully and injuriously intending,
&c., on divers days and times, &c., dumped and filled into
and upon the natural surface of certain lands near to the
plaintiffs' said lot and dwelling-houses, a vast quantity, to
wit, two hundred thousand tons of earth, gravel, stones and
other filling, and raised and banked upon said lands embank-
ments of great height, to wit, of the height of thirty feet,
and thereby forced and pressed large quantities of the said
earth, gravel, stones and other fillings into and upon the said
lot of plaintiffs beneath the surface of the same, and thereby
upheaved and greatly disturbed the surface and soil of said
lot, and forced and carried the said dwelling-houses to the
northward and eastward of their proper position upon said
lot, and to and upon the lands of others, and thereby caused
the foundation of said dwelling-houses to fall away, crack and
crumble, and the walls of said houses to become broken,
shattered and defaced, and to topple and lean over," &c.

The defendants, by a special plea, justify as lessees of the
New Jersey Junction Railroad Company, a corporation of
this state organized under the General Railroad law, and
authorized to lay out, construct, maintain and operate a rail-
road between certain designated points. The plea contains
averments of the survey and location of a railroad by the
company duly made and filed, and that the company had
acquired title to lands required for the construction of its
railroad. The plea avers that " the defendants, as lessees of
the said New Jersey Junction Railroad Company, in order to
carry into effect the object of the incorporation of the said
company, did proceed to construct its road upon said lands
with reasonable prudence and care, doing no unnecessary
damage to private or other property, and did, in the prosecu-
tion of the said work, necessarily with reasonable prudence
and care, doing no unnecessary damage to private or other
property, dump, fill into and upon the natural surface of its
own lands so acquired by it as aforesaid, a quantity of earth
and other filling, and raise and bank up upon said last-men-
tioned lands embankments of great height, as it lawfully

might do for the causes aforesaid, which are the said supposed trespasses or grievances of which the said plaintiffs in their declaration complain, without that," &c.

The declaration contains two counts, setting out substantially the same cause of action, and the defendants plead separate pleas—the Pennsylvania Railroad Company justifying under the franchises possessed by the United New Jersey Railroad and Canal Company. But the foregoing abstract of the pleadings is all that is necessary for present purposes.

The cause of action set out in the declaration is a trespass upon the plaintiffs' lands. The allegation that the acts of the defendants were wrongfully and injuriously done is a sufficient averment to sustain the declaration. The merits of this controversy arise upon the consideration of the pleas filed by way of justification.

For what character of injuries, occasioned in the course of the exercise of corporate powers and franchises such as the defendants invoke, the company's charter will afford a justification, is a subject upon which the law in this state may be regarded as settled.

In *Beseman* v. *The Pennsylvania R. R. Co.*, 21 *Vroom* 235, the court held that an action would not lie against a railroad company authorized by its charter to construct and operate a railroad, at the suit of the owner of lands adjacent to the company's track, to recover damages arising incidentally from the operation of its railroad and the transaction of its business, except upon an allegation of negligence or want of skill. In that case the suit was by the owner of improved property adjacent to the track of the company's railroad. The declaration alleged that the company built an elevated track for a railroad in the rear of the plaintiffs' lots, within ten feet of the dwelling-houses thereon, and used said track for the passage of locomotives and cars in the transportation of cattle, sheep, swine, manure and other freight, so as to render said dwelling-houses unfit for habitation, and wrongfully allowed its cars loaded with such freight, both in the daytime and at all hours of the night, to stand upon said track, emitting

noisome odors, &c., and shifted and distributed its cars, and blew the whistle of its locomotives, and causing great and unusual noises, &c., and jarring the doors and walls of said dwelling-houses, &c., whereby, &c.   To the declaration the defendant pleaded its chartered right to build an elevated railroad, and that it used the same in the prosecution of its business as a common carrier of passengers and freight, as it lawfully might do, and did thereby necessarily create some smell and some noise, and did necessarily shift and distribute its cars, and did necessarily blow the whistles of its locomotives, &c., and did necessarily cause noises, smoke and vibration, and did necessarily transport thereon cattle, sheep, swine, manure and other freight, as it lawfully might do, without that, &c.

. This plea was demurred to, and the Chief Justice, in sustaining the plea, placed his opinion on the stable ground that the franchises granted to the defendant legalized the running of trains and the transportation of freight by the company, and the acts complained of being themselves lawful, those incidental injuries which necessarily and unavoidably resulted from the exercise of legislative authority, if prosecuted with due care, were *damnum absque injuria*, for which no action would lie.   This case was followed in *Thompson* v. *Pennsylvania R. R. Co.*, 22 *Vroom* 42, and was subseqently affirmed on error, the opinion of the Chief Justice being adopted as the opinion of the Court of Errors.   23 *Id.* 221.

But Beseman *v.* Pennsylvania R. R. Co. gives no countenance to the plea now in question.   The distinction is between those incidental injuries which are unavoidable in the operation of a railroad in the transaction of its business, such as the sounding of whistles, the emission of smoke and sparks from locomotives, the noise and vibrations incident to the running of trains, the interference with public highways, annoyances from the character or condition of freight transported, and the like, which are injuries partaking of the nature of public injuries, and acts which are a direct invasion of private property.   Injuries of the class first mentioned are the necessary concomitants of the use of the franchises granted.   The acts

from which such injuries arise being legalized, are not public nuisances, and there is no foundation on which to apply the principle that a private individual may have redress for an injury arising from a public nuisance, in case he sustained any special and peculiar injury therefrom, beyond that suffered by the public at large. It was in speaking of injuries of this character that the Chief Justice said : " If a railroad, by the necessary concomitants of its use, is an actionable nuisance with respect to the plaintiff's property, so it must be as to all other property in its vicinity. * * * The noises and other disturbances necessarily attendant on the operation of these vast instruments of commerce are widespreading, impairing in a sensible degree some of the usual conditions upon which depend the full enjoyment of property in their neighborhood ; and, consequently, if these companies are to be regarded purely as private corporations, it inevitably results that they must be responsible to each person whose possessions are thus molested. Such a doctrine would make these companies, touching such landowners, general tort feasors. Their tracks run for miles through the cities of the state, and every landowner on each side of the track would be entitled to his action ; and so, in the less populated districts, each proprietor of lands adjacent to the road would have a similar right, and thus the litigants would be numbered by thousands." And it was with respect to injuries of this character that the Chief Justice said that it was competent for the legislature to dispense the company from responsibility for such damage.

*Quinn* v. *City of Paterson*, 3 *Dutcher* 35, and that class of cases which adjudge that a municipal corporation, executing a public trust for public benefit within the scope of legislative authority, is not liable for damages incurred by an abutting owner of lands in the change of the grade of a street, are illustrations of the same principle. *Bordentown and South Amboy Turnpike Co.* v. *The Camden and Amboy R. R. Co.*, 2 *Harr.* 314, is a pertinent illustration of this principle. The suit in that case was by a turnpike company against a railroad company which had constructed its railroad for twenty miles par-

allel to the plaintiff's turnpike road, within twenty feet of it, and crossing it in six different places. The gravamen of the suit was that the railroad company used upon its railroad engines which emitted fire and smoke near to and on said turnpike road, and corrupted the air and created alarming appearances, so that it became dangerous to travelers, &c., whereby the plaintiffs were hindered and disturbed in their franchises and deprived of tolls, &c. The defendant justified under its charter, and its plea of justification was sustained. The court held that the injury complained of could not arise from the performance of a lawful act; that unless the defendant exercised its right in an unlawful manner, not contemplated or warranted by the legislature, no action would lie.

But the doctrine of these cases is not applicable to acts done under legislative sanction which are essentially private wrongs and a direct invasion upon private property. For such injuries the company's charter affords no justification. In the *Delaware and Raritan Canal Co.* v. *Lee*, 2 *Zab*. 243, the plaintiff sued for an injury to his lands by back water, which was caused by the insufficient capacity of a culvert built by the defendants to vent the waters of the stream which flowed through the plaintiff's premises. The defendant's canal did not cross the stream on the plaintiff's land, but upon the land of an adjoining proprietor lower down the stream. The defendant justified under its charter. To this justification the plaintiff's counsel contended that the act complained of was a wrongful act not authorized by the defendant's charter; that it was not necessary for the construction of the defendant's canal to obstruct the stream, and that if such act was not necessary for the construction of a public work, the charter did not, and the legislature could not, grant the power. In overruling the defence, Chief Justice Green said: "It is by no means true that an act causing a [private] nuisance must necessarily be in itself unlawful. On the contrary, acts which in themselves are perfectly lawful, may and frequently do, in their consequences, work actionable injuries to others. To construct a mill dam upon one's own property is a perfectly

lawful act; but if, by means of such dam, the natural current, of the water is obstructed and thrown back upon the lands of another, it becomes actionable as a nuisance. * * * In the present case the construction of the canal by the defendant was a lawful act, but the consequences of that act, the penning back of the water upon the plaintiff's land, was an infringement of his rights for which he is entitled to remuneration in damages." *Sinnickson* v. *Johnson,* 2 *Harr.* 129 ; *Tinsman* v. *The Belvidere, Delaware R. R. Co.,* 2 *Dutcher* 148, and *Trenton Water Co.* v. *Raff,* 7 *Vroom* 335, are precedents of like import. In each of these cases the work was done under competent legislative authority, and in each it was held that an injury resulting from the invasion of private property in the execution of the work was an actionable wrong.

The distinction between those injuries incidentally and unavoidably arising in the course of the exercise of franchises conferred for those purposes, which are denominated public uses, with the consequent immunity from actions therefor, and injuries occasioned by the direct invasion of private property under color of such franchises, which are actionable wrongs, has been adopted by the Supreme Court of the United States, as will be made apparent upon a comparison of the opinions in *Pumpelly* v. *The Green Bay Co.,* 13 *Wall.* 166, 177, 178 ; *Transportation Co.* v. *Chicago,* 99 *U. S.* 635–642, and *The Baltimore and Potomac R. R. Co.* v. *Fifth Baptist Church,* 108 *Id.* 317, 331, 332.

The plea in this case in substance amounts to a claim on the part of these defendants, that the company's charter conferred upon it a servitude in adjacent lands to use them for the maintenance of its road-bed and such structures as might be placed upon it, provided the company constructs its road with reasonable prudence and care. At common law, the right of lateral support for one's land by the soil of an adjoining proprietor is a right of support while the lands remain in a natural state. The right of support for artificial weight placed thereon by the erection of buildings or otherwise, can be acquired only by grant or prescription. The statute under

which this company was organized does not purport to confer a right of this nature. It authorizes companies created under its sanction to construct and operate railroads, but for the use or occupation of property required for the construction or use of railroads, the statute provides for the acquisition of the right by purchase or condemnation. The appropriation of private property to such a use by any other means than purchase or condemnation upon compensation, would be a taking of private property in violation of the constitutional prohibition. *Trenton Water Co.* v. *Raff,* 7 *Vroom* 335; *Ward* v. *Peck,* 20 *Id.* 42; *Pumpelly* v. *Green Bay Co.,* 13 *Wall.* 166; *Eaton* v. *B. and C. R. R. Co.,* 51 *N. H.* 504; *S. C.,* 1 *Am. Ry. Rep.* 44. Nor will the situation be changed if the gravamen of the plaintiffs' suit be considered as simply an act of trespass. Between an injury to property, though it be temporary, which diminishes its value or usefulness, and its total destruction or complete appropriation, the difference is only in degree.

In another plea the defendants pleaded in bar a justification under a covenant contained in a deed made by Edward D. Adams to John H. Cronan, bearing date June 9th, 1886. The plea avers that Adams was at that time the owner of the plaintiff's lands, and also of the lands of the junction company, upon which the said embankment was constructed, and that in the said deed of conveyance the said Cronan did, for himself, his heirs and assigns, covenant and agree that he, the said Cronan, would not, nor would either of them, claim any damage in anywise arising to the premises thereby conveyed from the building or maintaining of the railroad then to be built by the New Jersey Junction Company. The plea further alleges that the junction company acquired title to the said strip on which the said embankment was made from Adams, as grantor, and that the plaintiffs are grantees from said Cronan, and that the defendants, as lessees of the junction company, did proceed to construct its railroad upon the lands so acquired by said company, with reasonable prudence and care, doing no unnecessary damage, &c., as it lawfully might, &c.

A covenant perpetual not to claim damages, like an unlimited covenant not to sue, may be construed as a release, if necessary to carry into effect the intention of the parties. The principle on which this rule of construction rests is to avoid circuity of action; for if in such a case the covenantor should, contrary to his covenant, sue for the damages, the covenantee in a suit for the breach of the covenant would recover as his damages the same sum which was recovered of him by the covenantor in his suit. 2 *Saund.* 48, *n.* 1; 8 *Bac. Abr.* 248, tit. *"Release" A;* 2 *Add. Cont.* 837 (1224); *Cuyler* v. *Cuyler*, 2 *Johns.* 187.

But the covenant in the Cronan deed cannot be made available by the defendants as a defence in the suit. In the first place, the covenant is not a grant of an easement or of a right in the nature of an easement in the premises conveyed, and, I think, it may be regarded as settled that the burden of such a covenant, if it be considered as a covenant real, will not at law run with the lands and bind the alienee in any case, except that of landlord and tenant. 1 *Sm. Lead. Cas.* (*9th ed.*) 199, *Notes to Spencer's Case; Brewer* v. *Marshall*, 4 *C. E. Gr.* 537, 545; *Richards* v. *Harper*, *L. R.*, 1 *Ex.* 199; *Austerberry* v. *Corporation of Oldham*, 29 *Ch. Div.* 750, 775, 776, 781, 782, 784; *Leech* v. *Schweidner*, 9 *Ch. App.* 463–475.

In the second place, the covenant is in a deed *inter partes*, between Adams on the one side and Cronan on the other, to which the Junction Railroad Company was not a party. The covenant does not contain any language indicating an intent that the railroad company or the grantee of other lands of Adams should derive any benefit under it. Contained in a deed *inter partes*, the covenant must be construed as a covenant *inter partes* with Adams individually for his personal indemnity against the recovery of damages from him for anything he had done or might do in the premises. Between Cronan and the railroad company there was no privity of contract, and certainly there is no privity of contract between the plaintiffs and the company, or the defendants as its representatives, on which the latter could found an action. If the plaintiffs should prosecute the suit successfully to judgment, the defendants could not

maintain an action against them upon the covenant for the recovery back of the damages recovered in this suit. The indispensible condition under which the covenant should be allowed to operate as a release to these defendants is wholly wanting.

On both pleas the plaintiffs are entitled to judgment. The Circuit Court is advised accordingly.