132 N.J. Super. 523 (1975)
334 A.2d 360
COUNTY OF OCEAN, IN THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ANGELA M. LANDOLFO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1974.
Decided February 28, 1975.
*525 Before Judges MICHELS, MORGAN and KENTZ.
Mr. Garry J. Roettger argued the cause for appellant (Messrs. Hiering, Grasso, Gelzer & Kelaher, attorneys).
Mr. Richard O. Venino argued the cause for respondent.
PER CURIAM.
This is a condemnation case involving the partial taking by plaintiff County of Ocean of 4.84 acres from an unimproved tract of land consisting of 57.86 acres located on Hooper Avenue, opposite its "T" intersection with Fischer Boulevard, in Dover Township, Ocean County, New Jersey. October 21, 1968 was the date fixed by the court for valuation. The commissioners conducted their hearing and awarded the sum of $36,000 for the 4.84 acres taken. Both parties appealed and a trial de novo was held before a jury. The jury awarded defendant property owner $32,000. The county appeals.
The entire tract of land from which the 4.84 acres was taken is irregularly shaped, having 2300 feet of frontage on Hooper Avenue and a depth of 1740 feet. Its topography *526 varies from below grade to two feet above grade toward the rear. Natural drainage is therefore from the rear of the property towards Hooper Avenue. Portions of the property were, prior to the taking, subject to flooding. It was formerly used as a cranberry bog. Although there are no improvements on the subject property, the land was zoned R-200, permitting single-family residential construction. No application for subdivision had ever been filed.
The portion of the land taken consisted of an irregularly shaped 4.84 acre parcel which included 710 feet fronting on Hooper Avenue to a depth of 467 feet. The purpose of the taking was to provide a jughandle to protect vehicles making a left turn from Hooper Avenue southbound to Fischer Boulevard eastbound, as well as to provide reversal capability due to a center island being installed in Hooper Avenue. The posted speed limits on Hooper Avenue and Fischer Boulevard are 50 mph.
Both parties produced expert testimony on value. Both witnesses adopted the so-called market data approach in estimating the value of the taken parcel, requiring an analysis of sales of comparable property adjusted with respect to time of the sale, location and characteristics of the comparable property. Plaintiff's expert, Joseph D. Palmer, based his valuation upon three comparable sales. The first sale consisted of an irregularly shaped parcel of 39 acres, zoned R-200, immediately adjacent to the subject property, with 380 feet of frontage on Hooper Avenue, which sale took place over three years before the date of valuation. The per acre price of $1666 was adjusted by Palmer for time, location and physical characteristics to $3000. The second sale utilized was of a 15-acre piece of unimproved land, located 500 feet south of the subject property, zoned R-200, from which a per acre price of $1500 was obtained in July 1965, again over three years prior to evaluation date. Similar adjustments to account for the time of the sale, location of the property and its characteristics yielded a valuation of $2700 an acre. The third sale utilized by Palmer was of an irregularly shaped *527 unimproved parcel consisting of 19 acres, for which a purchaser in July 1965 paid $1500 an acre. This figure was similarly adjusted to $2700. Based on these sales, Palmer was of the opinion that the condemned 4.84-acre piece was valued at $3000 an acre.
John D. Lazarus testified on behalf of defendant property owner. He, too, announced that his opinion as to value was arrived at by applying the market data approach, using comparable sales with the appropriate adjustments. As stated by Lazarus:
I use the market data approach, which is also known as the comparable sales approach, as this is an improved [sic] property and it is the only approach applicable to support the appraiser's opinion. And that means my examination of sales in the area of lands that would be comparable as to size, as to topography, as to location, and as close as possible with zoning. Also for the same type of use.
He was about to offer five such sales, at which point plaintiff requested a hearing, out of the presence of the jury, as to their comparability. The hearing disclosed that four of the five sales relied upon by Lazarus were of parcels for which preliminary subdivision approval had been obtained at the time of sale. Thus, the 1969 Snug Harbor property was sold as an approved subdivision. Defendant admitted that three other sales to which Lazarus was about to refer were also made with respect to acreage for which preliminary subdivision approval had been obtained. The trial judge concluded these were not comparable sales and refused to permit Lazarus to testify with respect to them as affirmative evidence of value. Of the five sales upon which Lazarus relied in arriving at a valuation, only one was left, the 1968 Cypress Mines sale of 104 acres of landlocked land which sold for $1850 an acre. It was also zoned R-200 and located three-quarters of a mile southwest of the subject premises.
On cross-examination of Lazarus, however, the trial court refused to permit plaintiff to interrogate Lazarus with respect to the weight given by Lazarus to the excluded sales in *528 reaching his opinion as to value of $3500 an acre, on the ground that he had already declared evidence of these sales inadmissible. It warned plaintiff that if he undertook cross-examination concerning these excluded sales and the effect they may have had on Lazarus' opinion as to value, he would then be forced to admit the excluded sales into evidence. Plaintiff contends this ruling was error. We agree.
It has been declared elementary that an expert witness is always subject to searching cross-examination as to the basis of his opinion. State v. Azzolina Land Corp., 101 N.J. Super. 103, 109 (App. Div. 1968). The weight to be given to an expert's appraisal of land depends, of course, upon his candor, intelligence, knowledge, and especially upon the facts and reasoning which are offered as foundation of his opinion. D., L. & W.R. Co. v. Hoboken, 16 N.J. Super. 543 (App. Div. 1951), rev'd on other grounds 10 N.J. 418 (1952); Savoia v. F.W. Woolworth Co., 88 N.J. Super. 153 (App. Div. 1965); State v. Azzolina Land Corp., supra.
In the present case the determination as to the noncomparability of four of the sales referred to by Lazarus in support of his opinion as to value was a matter committed to the sound discretion of the trial judge which was not mistakenly exercised in the circumstances here present. State v. Azzolina, supra 101 N.J. Super. at 109. Moorestown Tp. v. Slack, 85 N.J. Super. 109, 114 (App. Div. 1964), certif. den. 43 N.J. 452 (1964). As noted in 5 Nichols, Eminent Domain (3d ed. 1971), § 21.31: (at 21-54 to 21-56).
Obviously, no two properties can be exactly alike, and no general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible. It must necessarily vary with the circumstances of each particular case. Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused.
See Waukegan Park Dist. v. First Nat. Bank of Lake For., 22 Ill.2d 238, 174 N.E.2d 824 (Sup. Ct. 1961). Having *529 determined, however, that four of the five sales referred to by the landowner's expert to be noncomparable as a matter of law, it was clearly proper for plaintiff to attempt to discover and inform the jury of the extent to which the landowner's expert relied upon such noncomparable sales in arriving at his opinion as to value. The refusal to permit him to do so, or permitting him to do so only at the risk of having the noncomparables admitted into evidence, constituted reversible error.
That such sales were inadmissible to establish value did not lessen their potential for undermining opinion testimony which appeared to have been based thereon. Indeed, under early law, now obsolete, evidence of comparable sales was not even admissible on the direct testimony of the appraiser, but could only be used during his cross-examination. 8 Nichols, Eminent Domain, § 13.02(3). Inadmissibility of such sales to state value is no index of its availability on cross-examination to determine the weight, if any, given by the expert to the sales declared lacking in comparability as a matter of law.
The county next contends that the trial court committed error in denying its motion to strike all testimony concerning damage to the remaining property caused by the anticipated traffic which would be generated by the jughandle, together with noise and fumes resulting from use by traffic. The availability of compensation for this kind of damage to the land remaining after a partial taking for highway or jughandle uses remains an open question in this State except in special circumstances as when the land affected by the traffic, noise, fumes, and the like, has a special use, such as a school. Cf. Bd. of Ed. of Morristown v. Palmer, 88 N.J. Super. 378 (App. Div. 1965), rev'd on other grounds 46 N.J. 522 (1966); State v. Bd. of Ed. Elizabeth, 116 N.J. Super. 305 (Law Div. 1971).
It is unnecessary for us to deal with this problem in the present case, and we therefore expressly decline to do so, because in the circumstances presented any testimony concerning *530 damage to the remainder stemming from traffic, noise and fumes would be too remote and speculative to warrant reception into evidence whatever the general rule with respect to the availability of compensation for this kind of damage to a remainder may later be disclosed to be. The portion of defendant's land taken and the portion remaining were raw acreage for which no application for subdivision approval had even been made. The record discloses no present intention to make such an application. No evidence was produced with respect to present or anticipated future traffic volume. In these circumstances, any evidence or opinion based thereon concerning the existence of damage to the remainder, or its extent, caused by traffic on the jughandle, would necessarily be speculative and remote, and could not serve as the basis of any award of compensation. The denial of plaintiff's motion to strike all such evidence bearing on this claim and the submission of this issue to the jury for consideration constituted reversible error.
Judgment below is reversed and the matter remanded for a new trial.