RIMM, J. T. C.
This local property tax matter is before the court on the petition of the taxpayer to the Division of Tax Appeals. It was subsequently transferred to the Tax Court by operation of law, N.J.S.A. 2A:3A-26, and involves issues of valuation and discrimination for the tax year 1978.
The property is block 673, lots 6, 7 and 8-1, and is known as 2775 Hooper Avenue. It is located on the northerly side of Hooper Avenue approximately 150 feet east of Route 70, and has frontage on Hooper Avenue of approximately 270 feet and an average depth of 700 feet. The total area is approximately 7.91 acres. The improvements are five two-story-and-basement garden-apartment buildings. There are 90 apartment units in the complex, 40 of which have finished basements. The tenants supply electricity, and the owner supplies gas for heating, cooling and cooking. For the tax year 1978 the original assessment and the Ocean County Board of Taxation judgment were the same as follows:
Land $ 135,000
Improvements 1,000,000
Total $ 1,135,000
Title to the property was conveyed to the plaintiff on February 1, 1978. The total consideration was $1,520,000, paid as follows:
First mortgage
(Interest rate 8V2%, 28-year term, self-liquidating no amortization until November 1979) $ 1,200,000
Second mortgage
(Interest rate 6%, 10-year term, no amortization, final payment $210,000 at end of term. No payment at all until April 1,1978.) 210,000
Cash 110,000
Total $ 1,520,000
*512 The taxpayer’s expert appraised the property by the income approach. In arriving at his value by the income approach the witness estimated the gross annual income at $274,000, a vacancy and rental loss of $19,180, and expenses of $151,828, including a 5% management fee, estimated repairs and maintenance of 7%, annual reserve for replacements and painting of $26,100, and miscellaneous expenses of $25 per apartment, or a total of $2,250. These estimates resulted in an estimated net income of $102,992. The witness also stated that the rate of return for the land was 11.915% and the building capitalization rate was 15.215%, as follows:
Interest rate 9.5 %
Effective tax rate (or actual tax rate of $3.45 per $100 of assessed valuation multiplied by the Director’s ratio of .70) 2.415%
Recapture rate (30-year life) 3.3 %
The following calculations then appear in the witness’ appraisal which was marked in evidence as a plaintiff’s exhibit:
Net Income (repeated): $ 102,992
Income imputable to land ($135,000 x .11915): 16,085
Income imputable to improvements: $86,907
capitalized at .15215
Improvements’ value $ 571,192
Land 135,000
Property value at 100% ' $ 706,192
Less deferred maintenance 50,000
Adjusted Property Value: $ 656,192
Director’s Ratio .70
Fair Assessment $ 459,300
While there is a presumption that a county board judgment is correct, Riverview Gardens v. North Arlington, 9 N.J. 167, 87 A.2d 425 (1952); Glenwood Realty Co. v. East Orange, 78 N.J.Super. 67, 187 A.2d 602 (App.Div.1963), the presumption only stands until it is overcome by sufficient and competent *513 evidence. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 89 A.2d 385 (1952); Spiotta Bros. v. Mine Hill Tp., 1 N.J.Tax 42 (Tax Ct.1980). Once substantial evidence to the contrary is adduced, the presumption has no artificial probative force. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 208 A.2d 153 (App.Div. 1965). The court should review all of the evidence before it to determine if there is sufficient and competent evidence which, when coupled with any acceptable appraisal procedure, overcomes the presumption of correctness. The court can then carry out the duty incumbent upon it, once the presumption is overcome, to appraise the testimony, make a determination of true value and fix the assessment based on a fair preponderance of the evidence. Id.
In this case the presumption of correctness has not been overcome. The building residual method in the income approach used by the plaintiff’s expert is rejected because there is no basis for the land value used. There are two references to the land in the appraisal: one is a recitation that the 1978 land assessment was $135,000; the other is to indicate a land value of $135,000 for purposes of allocating a portion of net income to land. There is no other evidence of land value in the appraisal, and there was not a shred of testimony on land value from the taxpayer at the time of the trial.
In a case in which discrimination is an issue there is no rational basis for a party to claim that the land assessment equals value but the improvements assessment does not. “Indeed [a taxpayer] would receive an undue advantage if he could confine his proof in a case of this kind to the treatment of only land or building and have the trier of the facts assume the assessed valuation of the other accords with true value.” In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 23, 166 A. 2d 763 (1961). If an assessment is correct, it will not be disturbed on complaint to this court. If a plaintiff alleges that an assessment is not correct, it has no validity as proof of value. In Andrew Realty Co. v. Little Falls Tp., 2 N.J.Tax 114 (Tax Ct.1981), the court said:
*514 Plaintiff argues that there is no need for it to prove true value because defendant’s tax assessor is required by law to assess all property at “full and fair value.” N.J.S.A. 54:4-23. However, it is common knowledge that assessments in any taxing district are not necessarily the equivalent of true value....
This court would be able to consider granting relief in this case only upon proof of the value of the subject property. It cannot grant relief based upon an abstract legal standard which may not reflect actual assessment practice. Plaintiff has chosen to present no proof on the issue of value. It therefore cannot prevail on the issue of discrimination, [at 116]
“Several procedures for the valuation of land are available to the appraiser.” American Institute of Real Estate Appraisers, The Appraisal of Real Estate (7 ed. 1978), 140. They are the market data (comparative) procedure; the allocation (abstraction) procedure; the anticipated use (development) procedure, and the land residual procedure. The use of an assessment as an indication of value is not included as an acceptable procedure for valuing land. None of several authorities even allude to the use of an assessment as an indication of value. McMichael’s Appraising Manual (4 ed. 1975); Babcock, Appraisal Principles and Procedures (1968); Wendt, Real Estate Appraisal (1974). On the contrary, “a well-standardized formula. .. appears in most of the opinions” in tax cases.
The formula, which has the sanctity both of great age and of constant repetition, is that value means market value, which in turn is defined in some such words as “the price which the property would bring in an open market on a free, not forced sale between a willing buyer and a willing seller.” [Bonbright, Valuation of Property (1937), 462]
This, of course, is the law in New Jersey. Fort Lee v. Invesco Holding Corp., 3 N.J.Tax 332 (Tax Ct.1981); Genola Ventures-Shrewsbury v. Shrewsbury, 2 N.J.Tax 541 (Tax Ct.1981), and ITT Continental Baking Co. v. East Brunswick Tp., 1 N.J.Tax 244 (Tax Ct.1980).
One authority does deal with assessment ratios as a “check” on the market approach to value. But the use of an assessment with a ratio, not even done in the present case, is at best only a “check” and not a method of valuation. The author also says that such use “is facetiously referred to as the ‘fourth approach to value.’ ” Ring, The Valuation of Real Estate (2 ed. 1970), 141 (emphasis supplied).
*515 The rejection of the building residual method because of the use of a land value completely unsupported in the record does not necessarily conclude the matter adversely to plaintiff. However, in reviewing all of the evidence before it, the court is brought to other serious deficiencies in plaintiff’s case. There are before the court three separate appraisals, all for the same property, all as of the same date, October 1, 1977, the critical assessing date, and all prepared by the same appraiser — plaintiff’s expert, who testified. One appraisal is dated September 5, 1978. It was prepared and used before the county board of taxation and indicated that the property had a value of $1,011,-260. The appraisal is a matter of record before the court because it was submitted with plaintiff’s pretrial memorandum which referred to the appraisal as its factual and legal contentions. The second appraisal is a hand-corrected copy of the September 5, 1978 appraisal and was submitted to the court at the time of the pretrial conference on May 23, 1980, with plaintiff’s representation that the appraisal had been updated to reflect corrected income and expense information. It indicated that the property had a value of $745,300. The third appraisal is dated June 23,1980. It was prepared for the trial in this matter and marked in evidence as a plaintiff’s exhibit without objection. It indicated that the property had a value of $656,200. A comparison of certain data in the appraisals is pertinent:
Date of Appraisal
Item Sept. 5,1978 May 23,1980 June 23,1980
Effective gross income $ 309,690 $ 254,820 $ 254,820
Management 5% 12,741 15,480 12,741
Heat 20,000 20,000 27.000
Electricity 12,000 12,000 14.000
Repairs & maintenance 7% 17,837 21,678 17,837
Total expenses 142,828 149,408 151,828
Net income 111,992 149,408[1] 102,992
*516 The court can understand updating an appraisal prepared for use before a county board of taxation. It may be that such an appraisal was prepared under very strict time constraints, although a taxpayer intending to appeal to a county board of taxation can and should give his appraiser adequate notice so that a meaningful appraisal is prepared for use before the county board. In any event, there could very well be good reason to change an earlier appraisal based on further investigation, receipt by the appraiser of better records, or better analysis of the facts. If such good reason is given, the court should not question the credibility of the appraiser. But where, as here, there are three appraisals, the last two only one month apart, the credibility of the witness is to be greatly doubted. In addition, the explanations given by the appraiser for changes in his figures between September 5,1978 and May 23,1980 and for changes in the figures between May 23, 1980 and June 23,1980 were not reasonable.
There also was no basis for: 7% for repairs and maintenance, $25 an apartment for miscellaneous expenses, or 3.33% recapture rate, all of which were mere unsupported conclusions of the witness. Additionally, included in the annual reserve for replacements were heating, plumbing and air conditioning, without allocation among them. Such inclusion appears to be a partial duplication of the recapture rate. *517 The court is unable to find a net operating income based on sufficient competent evidence.
*516 Reserves for replacements provide for periodic expenditures during the economic life of the structure which leave no funds remaining in the reserve account. No reserves are accrued for replacement of items that will depreciate coincident with the economic life of the structure. The recapture provision of the capitalization process includes provision for this one-time recapture of the item’s cost. Thus a proper use of the reserves for replacement does not duplicate recapture in the capitalization process. [The Appraisal of Real Estate, supra at 354, n. 3]
*517 Even if a meaningful net operating income could be ascertained from the evidence, there was no evidence in the record from which to determine an overall capitalization rate. The witness explained his use of a rate of return by saying that he “made an analysis of typical mortgage and equity returns for properties of this nature throughout New Jersey and throughout the country.” When questioned by the court he added that the basis of his use of the rate of return was that “the American Institute of Real Estate Appraisers and other sources publish data on ... mortgages issued by life insurance companies and other large lenders.” No indication of the data was given to the court. No testimony was adduced to show, for example, that the rate of return used applied to the subject area or subject type of property.
In addition to the income approach, plaintiff’s expert also adjusted the sales price of the subject property in February 1978 of $1,520,000 for favorable financing to $1,333,627. However, no basis was given for the interest rates used in adjusting the first and second mortgages. The adjusted purchase price is therefore of no more help to the court then the income approach to value used by the witness.
The Tax Court has repeatedly admonished expert witnesses to • support their opinions. In Dworman v. Tinton Falls, 1 N.J.Tax 445 (Tax.Ct.1980), aff’d 180 N.J.Super. 366, 3 N.J.Tax 1, 434 A. 2d 1134 (App.Div.1981), certif. den. 88 N.J. 495, 443 A.2d 709 (1981), the court said:
The opinion of an expert depends upon the facts and reasoning which forms the basis for the opinion. Passaic v. Gera Mills, 55 N.J.Super. 73 [150 A.2d 67] (App.Div.1959), certif. den. 30 N.J. 153 [152 A.2d 171] (1959). Without explanation as to the basis, the opinion of the expert is entitled to little weight in this regard, [at 458]
In Atlantic City v. Atlantic Cty. Bd. of Tax., 2 N.J.Tax 30 (Tax Ct.1980), the court also said:
The judiciary and fact-finding bodies are not bound by the opinions of expert witnesses. Wright v. Purepac Corp., 82 N.J.Super. 100, 111, [196 A.2d 695] (Cty.Ct.1963). The weight to be given to an expert’s opinion depends especially *518 upon the facts and reasoning which are offered as the foundation of his opinion. Ocean Cty. v. Landolfo, 132 N.J.Super. 523, 528 [334 A.2d 360] (App.Div.1975). The weight and value of expert testimony are for the trier of the facts. Robbins v. Thies, 117 N.J.L. 389, 398 [189 A. 67] (E. & A. 1937). An expert’s opinion may be adopted in whole or in part or completely rejected. Middlesex Cty. v. Clearwater Village Inc., 163 N.J.Super. 166, 174 [394 A.2d 390] (App.Div.1978), certif. den. 79 N.J. 483 [401 A.2d 239] (1979). [2 N.J.Tax at 42-43]
The taxpayer has not adduced sufficient competent evidence to overcome the presumption of correctness.
In other words, it is not sufficient for the taxpayer merely to introduce evidence: the presumption stands until sufficient competent evidence is adduced to prove a true valuation different from the assessment. Such evidence must be definite, positive and certain in quality and quantity to overcome the presumption. Central R.R. Co. of N.J. v. State Tax Dept., 112 N.J.L. 5, 8 [169 A. 489] (E. & A. 1933). [Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952)]
The pronouncement in Central R.R. Co. of N.J. v. State Tax Dep’t, is particularly applicable to the case presently before the court:
It therefore seems sound in logic and clear in reason that appellant must stand or fall on its ability to sustain by competent and satisfactory proof the basic or fundamental grievance asserted by it. For, if the foundation falls, all reasons based on that foundation must likewise fail. [112 N.J. at 8 [169 A. 489]; emphasis supplied]
Defendant called its assessor as its witness. He used the three traditional approaches to value, relying primarily on the market approach. His testimony was essentially unsupported. Specifically, in his market approach he gave no testimony concerning the terms of the sales of the comparable properties. It is therefore impossible for the court to determine whether the value arrived at by this approach was correct. The sales prices of comparable properties must be adjusted to strip out favorable financing in order to determine the market value of the real estate. Petrizzo v. Edgewater, 2 N.J.Tax 197 (Tax Ct.1981); Murnick v. Asbury Park, 2 N.J.Tax 168 (Tax Ct.1981); and Niktan Realty Co. v. Passaic City, 1 N.J.Tax 393 (Tax Ct.1980).
The assessor’s testimony suffered from the same deficiencies as that of the taxpayer’s witness. Under the circumstances, the presumption of correctness has not been overcome and the court cannot disturb the assessment fixed by the county board judgment. [Schmertz v. Dover Tp., 4 N.J.Tax 145, 152 (Tax Ct.1982)]
The Clerk of the Tax Court will enter judgment dismissing the complaint.

The use of $149,408 as the net income by the appraiser was obviously an error as merely a repetition of the total expenses. The actual indicated net *516 income was $309,690 less $149,408, or $160,282. Using the appraiser’s building residual technique, his September 5, 1978 appraisal therefore indicates a value of $1,082,729, not $1,011,260.