RIMM, J.T.C.
This local property tax matter involves valuation and discrimination for the tax year 1980. The property is located at 18th Avenue and Old Mill Road and is known as Block 80, Lot 11. For the tax year the original assessment was:
Land $ 102,300
Improvements 642,300
Total $ 744,600.
*28 The county board of taxation entered a judgment affirming the original assessment and the taxpayer filed a complaint with the Tax Court seeking a review of the judgment.
The subject property contains approximately 6.5 acres and is improved with a two-story brick garden apartment development known as Glen Wall Heights Apartments containing 58 three and one-half room apartments and 20 four and one-half room apartments. There are no garages but there is ample open parking on the premises. There is also laundry equipment on the premises on a concession basis.
As of October 1, 1979, the critical assessing date, each tenant had a one-year lease and was provided with heat, water and cooking gas, but each tenant paid for his or her own electricity. The building was constructed in about 1962 and is brick veneer on interior wood frame construction with concrete floors on steel framing, asphalt shingle roofs, aluminum sliding sash with combination storm windows and screens and continuous concrete second floor terraces with sliding aluminum patio doors. There are garbage dumpsters and concrete walks. The driveways and parking areas are paved and have average landscaping. The buildings are generally in good condition and the neighborhood has other similar garden apartment developments.
In a proceeding in the Tax Court there is a presumption of correctness in favor of the county board judgment which must be overcome by plaintiffs introduction of sufficient competent evidence from which the court can find a value different from the assessment. Passaic City v. Botany Mills, Inc., 72 N.J.Super. 449, 178 A.2d 657 (App.Div.1962), certif. den. 37 N.J. 231, 181 A.2d 13 (1962).
In this case the plaintiff taxpayer introduced evidence indicating a value of $918,000 arrived at by the building residual technique of the income approach to value. By this technique the value of the land is ascertained and a portion of the net operating income of the property is attributed to it. The residual income which is attributed to the improvements is capitalized and a value is determined for the improvements. *29 The value thus determined for the improvements is added to the land value and a total value for the property is ascertained. American Institute of Real Estate Appraisers, The Appraisal of Real Estate (7 ed. 1978) at 405-406.
The taxpayer’s expert testified that he arrived at a land value of $200,000 by taking the land assessment of $102,300 and dividing that assessment by 51%[1] which was the Chapter 123[2] ratio. It is not acceptable nor appropriate to divide the land assessment by the Chapter 123 ratio to determine the land value.[3] Brick Assoc. v. Brick Tp., 4 N.J.Tax 510 (Tax Ct.1982). Such a methodology for valuation is not a substitute for proper appraising practice. The division of an assessment between land and improvements is an administrative act required by statute. N.J.S.A. 54:4-26. The separate assessments for the land and improvements components of a property do not necessarily represent the fair market value of those components. In re Kents Appeal, 34 N.J. 21, 33-34, 166 A.2d 763 (1961). Absent a supportable land value, the building residual technique of the income approach to value in this matter is rejected. Brick Assoc. v. Brick Tp., supra.
If there is evidence in the record, properly supported in the market, from which a value may otherwise be determined, as, for instance, by the use of an overall capitalization rate, then the court should find such a value and enter a judgment fixing the assessment accordingly. Samuel Hird & Sons v. Garfield City, 87 N.J.Super. 65, 208 A.2d 153 (App.Div.1965). However, in this case, there are other deficiencies in the evidence presented on behalf of the plaintiff which preclude determining a value for the subject property.
*30 The net operating income used by the plaintiff’s witness is not “an informed estimate of the probable prospective income from the property” based on an analysis of “known rentals for similar space in the same or comparable locations.” The Appraisal of Real Estate, supra at 325. Such an “informed estimate” is mandated as well by Rodwood Gardens, Inc. v. Summit City, 188 N.J.Super. 34, 455 A.2d 1136 (App.Div.1982), relying on Parkview Village Assoc. v. Collingswood Bor., 62 N.J. 21, 297 A.2d 842 (1972). The actual monthly rental for the subject property, as of January 1980, was $18,863. The taxpayer’s witness testified that the potential monthly rental income was $19,910 based on his opinion of what the subject property’s monthly rental income should have been. Whether or not, in any given case, “four comparable properties ... [need be] properly analyzed,” as suggested in Parkview Village Assoc., there must at least be some basis in fact for the economic rent used in determining value and the facts must be made known to the court. This was not done. The witness merely said that he “felt that an owner would stablize the rentals in pursuing an investment in this type of property.”
If the net operating income in the record were accepted, a value still could not be ascertained because a finding of a capitalization rate cannot be made from the record before the court.
The witness used a 10% risk rate plus the effective tax rate for the purpose of allocating a portion of the net operating income to land. The witness also used a 10% risk rate, a 2.5% recapture rate and an effective tax rate of 2.47% for a rate of return of 14.97% for the purpose of capitalizing the residual income attributable to the improvements. When questioned about the rate, the witness referred to certain indicators in the financial market which were contained in his appraisal marked in evidence.
COURT: All right. Can you tell me where in these pages I can find anything on the basis of which you came up with 10%?
A. No, Your Honor, that is basically a judgment call as is found — again I say — I start my research based upon, on page 10 of my report the listing as of *31 October 1, 1979, the prime rate, the return as to federal notes, the return on corporate notes and other investment vehicles, that has to be tempered to some extent because of the advantages and disadvantages of owning this type of real — of investment and also has to be weighed upon the actual interest rates and capitalization rates used by insurance companies for lending.
Such evidence does not establish to the satisfaction of this Court a capitalization rate to be used in determining real estate value. The best evidence of such a capitalization rate is to be obtained from the real estate market, and the rates used by the witness were not related by him to the real estate market.[4]
The overall capitalization used by the plaintiff’s witness, exclusive of the effective tax rate, was 11.955%.[5] Nothing in the appraisal marked in evidence or in the witness’ testimony would support a finding that an overall capitalization rate of 11.955% for the valuing of the subject real estate was proper as of October 1, 1979, nor is there sufficient competent evidence from which to find a proper capitalization rate.
Our Supreme Court has dealt with the problem of ascertaining capitalization rates and has directed that the determination of such a rate be based on an inquiry into what investors in real property demand.
The rate of return, the moat significant factor in the capitalization process, is difficult to find.... Yet a small difference has a large impact....
A court cannot assume the correct answer will be had merely by adding some factor to which would be charged for a well secured loan, for while it is true that there is little risk in such a loan, it is equally true that there is no hedge against a shrinking dollar or opportunity for gain in a rising market. Moreover, the owner obtains a deduction for depreciation on his income tax return which the mortgage lender does not, and hence the apparent return is increased in real *32 value. In any event, it is not for the trier of facts to decide abstractly what return an investor should want; the inquiry relates to what investors in property of this kind in fact do demand and do obtain in deals with willing sellers. [New Brunswick v. Tax Appeals Div., 39 N.J. 537, 551, 189 A.2d 702 (1963)]
The plaintiff’s expert testimony in this matter, from which it wishes a finding of value made resulting in a substantial reduction in its tax burden, overlooks the basic relationship of an expert to the litigation process.
The weight to which an expert opinion is entitled can rise no higher than the facts and reasoning upon which that opinion is predicated.... [Citations omitted] See Rule 57. Thus, findings of fact cannot be based on an expert’s “educated guesses,” Sheerr v. Evesham Tp., 184 N.J.Super. 11, 54 [445 A.2d 46] (Law Div.1982), or “gut feelings,” Princeton Research Lands v. Upper Freehold Tp., 4 N.J.Tax 402, 407 (Tax Ct.1982). In fact, an expert’s bare conclusions, unsupported by factual evidence, are inadmissible. Buckelew v. Grossbard, 87 N.J. 512, 524 [435 A.2d 1150] (1981); Castroll v. Township of Franklin, 161 N.J.Super. 190 [391 A.2d 544] (App.Div.1978); Tabatchnick v. G.D. Searle & Company, 67 F.R.D. 49 (D.N.J.1975). Thus, even though Workers’ Compensation Judges are regarded as experts and their findings are entitled to deference, those findings must nevertheless be supported by articulated reasons grounded in the evidence. Lewicki v. N.J. Art. Foundry, 88 N.J. 75, 89-90 [438 A.2d 544] (1981). [N.J. Rules of Evidence (Anno.1983), Comment 7 to Evid.R. 56]
An observer is qualified to testify because he has firsthand knowledge which the trier of the facts does not have of the situation or transaction in issue. An expert has something different to contribute. His is the power to draw inferences from the facts which a trier of the facts would not be competent to draw. To warrant the use of expert testimony, then, two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. McCormick, Evidence, (2 ed. 1972) at 29-30. The mere qualifying of a witness as an expert does not permit him to give unsupported opinions. The witness’ expertise qualifies him to take facts and to conclude from those facts an opinion relevant to the issue before the court which a nonexpert, with the same data, could not do. The evidence, data and the totality of the facts on the basis of which the opinion is *33 arrived at must be made known to the court so that it may evaluate the validity of the opinion and conclude what weight, if any, is to be given to that opinion. Ocean Cty. v. Landolfo, 132 N.J.Super. 523, 528, 334 A.2d 360 (App.Div.1975); Middlesex Cty. v. Clearwater Village, Inc., 163 N.J.Super. 166, 174, 394 A.2d 390 (App.Div.1978), certif. den. 79 N.J. 483, 401 A.2d 239 (1979).
Our former Supreme Court’s comments of nearly 100 years ago are pertinent to the present consideration of an expert’s function:
The general rule is that the opinion of a witness is not admissible. The exception is when required deduction from facts can only be drawn by witnesses possessed of special knowledge or skill concerning those facts. Such witnesses are experts, and their opinions are received from necessity. The true distinction between experts who may speak their opinions and non-experts who may not, is, “the non-expert testifies as to conclusions which may be verified by the adjudicating tribunal, the expert to conclusions which cannot be so verified. The non-expert gives the result of a process of reasoning familiar to every-day life; the expert gives the results of a process of reasoning which can be mastered only by special scientists.” WhartEv., § 35. [Thompson v. Penna. R.R. Co., 51 N.J.L. 42, 46, 15 A. 833 (Sup.Ct.1888); emphasis supplied]
Rule 56 has not changed the expert witness’ basic function. Evid.R. 56 (Anno.1983) While the rule has eased the expert’s testimonial burden, it has not eliminated the necessity for the expert’s basing his opinion on facts to be made known to the court.
Most jurisdictions require an expert to explain and support an opinion of value before their courts will allow the opinion to be considered by the trier of the facts. Eaton, Real Estate Valuation in Litigation, (1982) at 157. The Supreme Court of Rhode Island has said:
In the L’Etoile ease [L’Etoile v. Director of Pub. Works, 89 R.I. 394, 402, 153 A.2d 173] the opinion of an admitted real estate expert as to the fair market value, based solely on his long experience, was held to have been properly excluded for the reason that to have admitted it without supporting data would have denied the opposite party an opportunity to conduct an intelligent cross-examination. [Hunt v. Dir. of Pub. Works, 99 R.I. 111, 206 A.2d 91 (Sup.Ct.1965) ]
Deficiencies in the plaintiff’s proofs were not cured by the defendant’s evidence, and the complaint is dismissed.

$102,300 - 51% = $200,588, or $200,000 rounded.

N.J.S.A. 54:51A-6, formerly N.J.S.A. 54:2-40.4.

If land value may be ascertained in this manner, the improvements value may be ascertained by dividing their assessment by the average ratio. Of course such a procedure is circuitous. Multiplying the entire property value by the average ratio would result in exactly the assessment being attacked.

In a recent article presenting a new approach to extracting capitalization rates from sales, the authors say:
Most appraisers also would agree that information extracted from recent sales of similar properties is the best source of these expected rates of return. [Martin & Noble, “Capitalization Rates — The Future,” The Appraisal Journal 335 (July 1981) ]

Net. Operating Income Total Value $132,426 ^918 0^ = 14.425%. 14.425%-2.47% = 11.955%.