NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2336-15T2

BELINDA DODSON,

 Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF THE PUBLIC
EMPLOYEES' RETIREMENT SYSTEM,

 Respondent-Respondent.
_________________________________

 Argued May 23, 2017 - Decided June 23, 2017

 Before Judges Koblitz and Mayer.

 On appeal from the Board of Trustees of the
 Public Employees' Retirement System,
 Department of Treasury.

 Samuel M. Gaylord, argued the cause for
 appellant (Gaylord Popp, LLC, attorneys; Mr.
 Gaylord, of counsel and on the brief).

 Nonee Lee Wagner, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney;
 Melissa H. Raksa, Assistant Attorney General,
 of counsel; Ms. Wagner, on the brief).

PER CURIAM
 Appellant Belinda Dodson appeals from a final agency decision

of the Board of Trustees of the Public Employees' Retirement System

(Board) denying her request for accidental disability retirement

benefits. We affirm.

 Dodson worked as a juvenile detention officer at the Camden

County Youth Center (Center). On May 24, 2010, Dodson was injured

during a fight at the Center. She went to a local hospital for

treatment, but was not admitted.1

 In 2010, Dodson was treated for her injury by Dr. Brahman

Levy. Dodson also received orthopedic care from Drs. Steven

Kirshner, Steven Valentino and Youssef Josephson and pain

management from Dr. Adam Sackstein. Dodson went to physical

therapy three times per week for two consecutive weeks. She also

received epidural injections in her lower back.

 Dodson applied for accidental disability retirement benefits

alleging the 2010 incident caused a permanent and disabling injury

to her back that left her unable to perform her job. The Board

sent Dodson for an independent medical evaluation (IME) with Dr.

Bernard Weiss. Dr. Weiss concluded that Dodson was totally and

1
 In 2003, Dodson was injured during a fight at the Center resulting
in a herniated disc in her lower back. Dodson received treatment
for the 2003 injury, and returned to her job at the Center on a
full-duty basis.

 2 A-2336-15T2
permanently disabled due to an aggravation of a pre-existing

degenerative condition in her spine, not as a result of a

traumatically induced event on May 24, 2010.

 The Board awarded ordinary disability retirement benefits to

Dodson, but denied her request for accidental disability

retirement benefits. Dodson requested a hearing, and the Board

referred the matter to the Office of Administrative Law (OAL).

 Dr. Arnold Berman was appointed to serve as the Board's IME

doctor prior to Dodson's OAL hearing, replacing Dr. Weiss. To

prepare for the hearing, Dr. Berman re-examined Dodson. He found

Dodson did not suffer a permanent injury.

 Based upon Dr. Berman's re-evaluation of Dodson, the Board

revisited its original decision regarding disability retirement

benefits. The Board again denied Dodson's request for accidental

disability retirement benefits. The Board found Dodson's injury

was not directly related to the 2010 incident, and Dodson was not

permanently disabled from performance of her job function and

assigned duties. However, the Board allowed Dodson to continue

receiving ordinary disability retirement benefits until the

conclusion of her appeal or her return to work at the Center.

 3 A-2336-15T2
 A hearing was held before an administrative law judge (ALJ).

The ALJ heard testimony from Dodson, Dr. Barry Fass2 for appellant

and Dr. Berman for the Board.

 Based upon the evidence adduced at the hearing, the ALJ

concluded, in a written decision, that Dodson "failed to

demonstrate by a preponderance of the credible evidence that she

is permanently and totally disabled from the performance of her

regular and assigned duties."

 The ALJ considered Dodson's subjective complaints of pain in

her lower back, especially when she walked up or down stairs, and

pain radiating down her leg causing numbness in her heel and two

of her toes. The ALJ also reviewed the magnetic resonance imaging

(MRI) film taken four days after the 2010 incident. Based upon

the testimony, the ALJ determined that the 2010 MRI showed long-

standing degenerative disc disease at the L4-L5 and the L5-S1

levels, the same area injured in the 2003 incident. The 2010 MRI

film showed no disc herniation in Dodson's spine, and no new injury

to the L4-L5 level.

 The ALJ also considered the doctors' testimony related to

Dodson's discogram taken on December 15, 2010. Dr. Fass and Dr.

2
 Dr. Fass was not Dodson's treating doctor. Dr. Fass examined
Dodson for the limited purpose of testifying on her behalf at the
hearing. Dodson had an opportunity to call her treating doctors
to testify at the hearing but elected not to do so.

 4 A-2336-15T2
Berman disputed the findings on Dodson's discogram. According to

Dr. Fass, Dodson's discogram showed a grade three annular tear at

the L4-L5 level and opined that the 2010 incident aggravated her

2003 back injury at the same level. Dr. Fass also testified that

Dodson had a new lumbar bulge in her spine, in addition to a lumbar

sprain and lumbar nerve damage. Conversely, Dr. Berman opined

that Dodson had no new injuries according to the 2010 imaging

studies and no aggravation of her injury from the 2003 incident.

 The ALJ found Dr. Berman's reliance on the 2010 MRI film

rather than the 2010 discogram appropriate given the accuracy and

reliability of an MRI film as compared to the medically

controversial discogram test. Additionally, the ALJ accepted Dr.

Berman's explanation that annular tears, as seen in the discogram,

are often age-related rather that the result of a traumatic injury.

The ALJ further credited Dr. Berman's testimony that if a tear

occurred on May 24, 2010, as claimed by Dr. Fass, one would expect

to see such a finding on the MRI film taken four days later. The

ALJ also accepted Dr. Berman's testimony that Dodson's reflex and

muscle tests were normal upon objective testing and physical

examination. According to Dr. Berman, her complaints of pain on

range of motion and other touch tests reflected Dodson's subjective

statements as to pain, and were nothing more than symptom

magnification. The ALJ concurred with Dr. Berman's medical opinion

 5 A-2336-15T2
that any injury to Dodson's spine from the 2003 incident had

resolved based upon Dodson's return to work full-time and her

active lifestyle after the 2003 incident.

 After considering the evidence, the ALJ concluded that Dodson

"has not established by a preponderance of the evidence that she

is entitled to accident disability retirement pursuant to N.J.S.A.

43:15A-43 due to the fact that her injury is the result of a pre-

existing condition which has clinically resolved." Thus, the ALJ

concluded that Dodson's back injuries in 2003 and 2010 resolved

and that Dodson was not totally and permanently disabled. The ALJ

determined Dodson was not eligible for either ordinary disability

retirement benefits or accidental disability retirement benefits.

 The Board adopted the ALJ's decision and denied Dodson's

application for accidental disability retirement benefits.

 On appeal, Dodson claims the ALJ applied the wrong legal

standard because she was required to prove only that the 2010

incident was a "substantial contributing cause," and not the direct

cause of her "permanent disability," and thus disqualification on

the basis of a "pre-existing condition" was error. She also claims

there was not sufficient credible evidence in the record to deny

Dodson's application for accidental disability retirement

benefits.

 6 A-2336-15T2
 Our review of an administrative agency decision is limited.

In re Herrmann, 192 N.J. 19, 27 (2007). We will sustain a Board's

decision "unless there is a clear showing that it is arbitrary,

capricious, or unreasonable, or that it lacks fair support in the

record." Russo v. Bd. of Trustees, Police & Firemen's Ret. Sys.,

206 N.J. 14, 27 (2011) (quoting In re Herrmann, supra, 192 N.J.

at 27-28). We are not bound by an agency's statutory

interpretation or other legal determinations. Ibid.

 N.J.S.A. 43:15A-43 governs accidental disability retirement

benefits to a public employee who is a member of the Public

Employees' Retirement System. The statute provides:

 A member who has not attained age 65 shall,
 upon the application of the head of the
 department in which he is employed or upon his
 own application or the application of one
 acting in his behalf, be retired by the board
 of trustees, if said employee is permanently
 and totally disabled as a direct result of a
 traumatic event occurring during and as a
 result of the performance of his regular or
 assigned duties, on an accidental disability
 allowance.

 [N.J.S.A. 43:15A-43.]

 As the Supreme Court held in Gerba v. Board of Trustees of

the Public Employees' Retirement System, 83 N.J. 174, 186 (1980),

"what is now required by N.J.S.A. 43:15A-43 is a traumatic event

that constitutes the essential significant or the substantial

contributing cause of the resultant disability." Importantly,

 7 A-2336-15T2
nothing in Gerba altered an applicant's burden to demonstrate a

total and permanent disability in order to receive accidental

disability retirement benefits.

 Dodson argues that she met the five part test for accidental

disability retirement benefits established by the Supreme Court

in Richardson v. Board of Trustees, Police and Firemen's Retirement

System, 192 N.J. 189, 212-13 (2007). However, the first prong of

the Richardson test requires an applicant to show that he or she

is totally and permanently disabled. Ibid. If an applicant fails

to meet his or her burden under the first prong of the analysis,

there is no entitlement to accidental disability retirement

benefits.

 Here, the ALJ made credibility determinations after listening

to the competing and contradicting medical evidence provided by

Drs. Fass and Berman on the issue of Dodson's permanent and total

disability. We find no error in the Board's deference to the

ALJ's credibility determinations regarding the experts' testimony.

The significance accorded to an expert's opinion is weighed in the

context of the expert's explanation of the foundation for his or

her opinion, and the facts upon which he or she relies to form

that opinion. See State v. Townsend, 186 N.J. 473, 494-95 (2006);

Ocean County v. Landolfo, 132 N.J. Super. 523, 528 (App. Div.

1975). The ALJ determined that Dr. Berman was better trained and

 8 A-2336-15T2
qualified in his field than Dr. Fass. Moreover, the ALJ concluded

that Dr. Berman's testimony was consistent with the medical

evidence in the record.3 Thus, the ALJ rendered his determination

based upon his finding Dr. Berman to be more credible than Dr.

Fass.

 Because the ALJ determined Dodson was not disabled, the

"direct result" or the proximate cause prong of the Richardson

analysis was unnecessary. The record in this case contains

sufficient credible evidence to support the Board's conclusion

that Dodson was not disabled. Because we affirm the Board's

decision that Dodson failed to prove she was totally and

permanently disabled, we need not address the issue of causation.

 Affirmed.

3
 Drs. Kirshner, Valentino and Weiss did not testify during the
hearing. The reports and opinions of non-testifying doctors are
hearsay. See Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 599
(1988) (while hearsay is admissible in administrative proceedings,
courts require legal and competent evidence in the record to
support diagnoses).

 9 A-2336-15T2