**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1608-17T2

GEORGE HORTA,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued March 4, 2019 – Decided April 2, 2019

Before Judges Fasciale and Rose.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 2-10-274950 .

Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord, on the brief).

Stephanie Kozic, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant

Attorney General, of counsel; Stephanie Kozic, on the brief.)

PER CURIAM

Petitioner George Horta appeals from an October 19, 2017 final decision of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS), denying his application for accidental disability retirement benefits pursuant to N.J.S.A. 43:15A-43. We affirm.

Because the evidence adduced at the two-day hearing[1] is set forth at length in the ALJ's initial decision, we need not discuss it in detail.[2] In sum, on December 15, 2010, petitioner slipped and fell on ice before commencing a snowplowing job for the County of Mercer, his employer of three years. In addition to snowplowing, petitioner's position as a "laborer 1" included

---

[1] The hearing was conducted on two nonconsecutive days in February and March 2014 before another ALJ (initial ALJ), who retired prior to completing an initial decision. Thereafter, the matter was assigned to the present ALJ who reviewed the record and filed the initial decision.

[2] Petitioner's statement of facts discusses only his testimony, completely omitting any discussion of his expert's testimony, the medical records introduced in evidence, and the Board's evidence. Such an incomplete, one-sided presentation violates Rule 2:6-2(a)(5), which requires the appellant's statement of facts set forth the facts "material to the issues on appeal" and "incorporat[e] all pertinent evidence." Petitioner's appendix omits the report of the Board's expert, a violation of Rule 2:6-1(a)(1)(I), which requires that appellant's appendix include those documents on which respondent is likely to rely.

unloading supply trucks, lugging ladders, carrying wood and using power tools. Prior to his employment with the County, petitioner worked as a painter and contractor. According to petitioner, his neck and shoulders were injured in the incident.

Immediately following the incident, petitioner was treated and released in the emergency room. Thereafter, petitioner's treatment included cervical facet injections and epidural shots until his neck surgery approximately one year after the incident. The surgery was performed by Dr. Steven B. Kirschner and involved "a total disc replacement at the level C5-C6." Petitioner then received physical therapy to his neck and shoulders, but ceased treatments six or seven months later, claiming therapy did not "work[] for him."

Petitioner never returned to work after the incident. In May 2012, he applied for accidental disability retirement benefits. In November 2012, the Board denied the application, finding instead petitioner qualified for service retirement benefits. See N.J.S.A. 43:15A-47 (permitting retirement based on age). Petitioner appealed and the Board transmitted the matter to the Office of Administrative Law.

At the hearing before the initial ALJ, petitioner testified and presented the testimony of his expert, Dr. David Weiss; the Board presented the testimony of

its expert, Dr. Gregory S. Maslow.  Both parties moved into evidence numerous documents, including reports of medical professionals who treated petitioner.[3] The primary issue in the case was whether the injuries directly caused petitioner to become permanently disabled.  Notably, both experts acknowledged petitioner's March 2011 magnetic resonance imaging (MRI) tests revealed, among other things, "disc degeneration" and "age-related changes."

The evidence required the ALJ to determine which medical expert was more credible.  After carefully parsing the evidence supporting each expert's opinion, the ALJ determined Dr. Maslow's testimony "outweigh[ed]" the testimony of Dr. Weiss.  Among other factors, the ALJ considered "whether the expert's opinion [found] support in the records from other physicians and the information upon which the expert has based his report."

The ALJ elaborated:

> The medical records show that [petitioner] has degenerative, age-related spinal changes, and has had [those changes] for some time.  He was treated in 2009 for lumbar back pain, and a May 15, 2009, MRI found

---

[3]  Because the medical professionals who authored the reports did not testify, their reports and opinions are hearsay, but are admissible in administrative proceedings as long as there is "a residuum of legal and competent evidence in the record to support [them]."  Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 599 (1988).

disc herniation at the L4-L5 level plus degenerative disc disease of the lower back. . . . He received no further treatment for his lower back after 2009. Then, a little more than a year later, he suffered the December 2010 fall. The early-2011 MRI of his neck and upper back revealed either bulges or herniations involving five discs. Additionally, [petitioner] was treated for two other significant problems—surgery to repair a rotator-cuff tear and hand-injury repairs in 2008.

. . . .

Despite the multiple degenerative changes, [petitioner] was largely asymptomatic before he fell. But he was treated about a little more than a year before for his lower back, about which he has not complained since. With regard to causation, the fall set off a treating cycle that nonetheless led to constant complaints of pain.

The ALJ thus determined the incident "aggravated a pre-existing condition[,]" but petitioner failed to prove "that aggravation result[ed] in complete and total disability." Ultimately, the ALJ concluded Dr. Maslow's opinion carried more weight because it was based on his subjective testing of petitioner's pain level. In particular, "Dr. Maslow found normal range of motion when he personally moved . . . petitioner around, and found everything else to be normal—with the sole exception of when petitioner [did] adduction for himself, [which is] when [petitioner] reported significant pain." Conversely, Dr. Kirschner's post-surgery report, which Dr. Weiss relied upon, "was based on

[petitioner's] complaints and the functional-capacity evaluation, which also relates to the patient's behavior."

Dr. Maslow's testimony, as summarized by the ALJ underscores her findings. Specifically,

> Dr. Maslow explained that the range-of-motion test is partially subjective and partially objective. In a neck examination, tenderness is a subjective finding, because it relies on the patient's self-reporting of discomfort. Spasm, on the other hand, is objective because it is externally observable. In Dr. Maslow's view, subjective findings are not as useful in making decisions or diagnoses as are objective findings. Here, Dr. Maslow said, the primary issue in evaluating the presence of a disability is determining whether pain in the neck is also causing pain or numbness to radiate down in the shoulder, arm, or hand, which would indicate that a nerve is being impinged, resulting in nerve irritation, radiculitis, or radiculopathy . . . . That testing was negative, and Dr. Maslow performed a number of confirmatory tests.

Further, Dr. Maslow "performed a careful examination of the shoulders." Notably, "[p]etitioner did not have shoulder-muscle tenderness, nor shoulder-muscle spasm." The results of Dr. Maslow's "strength testing of the rotator cuff was normal for both shoulders, no impingement was found, and there was nothing wrong with the biceps tendon."

The Board adopted the ALJ's initial decision, which affirmed the Board's November 2012 decision denying petitioner's application for accidental disability benefits. This appeal followed.

On appeal, petitioner claims the ALJ applied the wrong legal standard because he was required to prove only that the 2010 incident was a "substantial contributing cause," and not the direct cause of his "permanent disability," and thus disqualification on the basis of a "pre-existing condition" was erroneous. Petitioner also claims the Board's decision was not supported by sufficient credible evidence in the record.

We have considered these contentions in light of the record and applicable legal principles, and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Pursuant to our "limited" standard of review, Russo v. Board of Trustees, Police & Firemen's Retirement System, 206 N.J. 14, 27 (2011), we affirm substantially for the reasons expressed in the ALJ's comprehensive written decision, which "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D). In doing so, we determine the Board's decision was not arbitrary, capricious, or unreasonable. Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001). We add only the following brief comments.

7

Petitioner claims that he met the five-part test for accidental disability retirement benefits established by our Supreme Court in Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189, 212-13 (2007). However, the first prong of the Richardson test requires an applicant to demonstrate that he is totally and permanently disabled. Id. at 212. If an applicant fails to meet his burden under the first prong of the analysis, there is no entitlement to accidental disability retirement benefits.

Here, the ALJ made credibility determinations after thoroughly reviewing the contradictory testimony provided by Drs. Weiss and Maslow on the issue of petitioner's permanent and total disability. We find no error in the Board's deference to the ALJ's credibility determinations regarding the experts' testimony. The significance accorded to an expert's opinion is weighed in the context of the expert's explanation of the foundation for his opinion, and the facts upon which he relies to form that opinion. See State v. Townsend, 186 N.J. 473, 494-95 (2006); Ocean Cty. v. Landolfo, 132 N.J. Super. 523, 528 (App. Div. 1975). The ALJ determined Dr. Maslow's opinion was based on objective testing and, as such, his opinion was more credible than that of Dr. Weiss.

Because the Board accepted the ALJ's determination that petitioner was not disabled, consideration of the "direct result" or the proximate cause prong

of the <u>Richardson</u> analysis was unnecessary. The record in this case contains sufficient credible evidence to support the Board's conclusion that petitioner was not disabled. Because we affirm the Board's decision that petitioner failed to prove he was totally and permanently disabled, we need not address the issue of causation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1608-17T2